585 A.2d 1136

**COMMONWEALTH of Pennsylvania, STATE PUBLIC SCHOOL BUILDING AUTHORITY, Petitioner,**

v.

**NOBLE C. QUANDEL COMPANY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1990.

Decided Jan. 14, 1991.

Reargument Denied March 4, 1991.

254

Meghan F. Wise, Klett, Lieber, Rooney & Schorling, Pittsburgh, for petitioner.

James J. Riley, with him, David H. Weidler, Riley and Fanelli, P.C., Pottsville, for respondent.

Before PELLEGRINI and BYER, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

This appeal involves two disputes [1] arising under a prime contract (the Contract) entered into by the the Commonwealth of Pennsylvania, State Public School Building Authority (Authority) and Noble C. Quandel Company (Quandel) on June 26, 1985 to construct an Advanced Technology and Health Services Center at the Williamsport Area. Community College (the Project).[2] One dispute concerns the provision of temporary heat for the Project and the other dispute involves certain excavating and landscaping work done to prepare the site for the Project. The Board of Claims (Board) has found in favor of Quandel in both disputes and has accordingly awarded Quandel contract damages.[3] The Authority now appeals the order of the Board.

Initially, we note that the Board is entrusted with the duty of factfinding, and this Court may neither assist nor interfere with that important function. *Commonwealth of Pennsylvania, Department of Transportation v.*

1. A third dispute involving retainage of the balance owing on the Contract was withdrawn in Quandel's Reply to New Matter.
2. In general, the Contract provided that the Project was to be completed pursuant to plans and specifications prepared by the Project Architect (Architect); work was to be inspected daily by the Authority's resident inspector and periodically by the Authority's District Inspector, the Director of the Authority's Bureau of Technical Services, and the Architect's Project Coordinator; and all disputes arising under the Contract were to be resolved according to the Authority's Rules for Determination of Controversy which were incorporated into the Contract.
3. The Board granted Quandel the awards along with interest at an annual rate of six percent.

*Burrell Construction & Supply Company, Inc.,* 111 Pa. Commonwealth Ct. 590, 595, 534 A.2d 585, 588 (1987). Our scope of review, therefore, is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence. *Novak v. Commonwealth of Pennsylvania, Department of Transportation,* 133 Pa. Commonwealth Ct. 220, 575 A.2d 661, 663 (1990).

While the two disputes involved in this appeal arise out of the same construction project, they are separate and distinct and involve claims for different aspects of the Project. Accordingly, each claim will be discussed separately.

## I. The Temporary Heat Claim

The temporary heat claim involves whether Quandel was relieved of its obligation to provide temporary heat for the Project because Quandel had sufficiently "enclosed" the building for it to become the responsibility of the prime heating and ventilating contractor. Section 68(c) of the Conditions of Contract states that Quandel is responsible for providing temporary heat for the Project until the building or a "major unit of a building" is "enclosed",[4] and then the responsibility is transferred to W. Kramer Associates, Inc. (Kramer), the prime heating and ventilating contractor. Section 68(d) and (e) further provide that Kramer may elect to utilize the permanent heating system upon assuming the responsibility for providing temporary heat. If Kramer elects to do so, then it would be responsible for the maintenance, mechanical operation, and supervision and Quandel would be responsible for the electricity and fuel required to operate the permanent heating system.

In December 1985 Quandel notified the Authority and all other interested persons that it had met the "enclosure" requirements of Section 68 and proposed to transfer respon-

---

4. The term "major unit of a building" is defined in Section 68(c)(1) as "a fully enclosed wing, or section, which shall have a floor area equal to at least fifty percent (50%) of the total floor area of that building." The term "enclosed" is defined in Section 68(c)(2) to mean when the building's "exterior walls have been erected; the permanent roof is installed and in a watertight condition; ...."

sibility for providing temporary heat to Kramer. Kramer, however, did not agree that the building was sufficiently "enclosed".[5] At a job conference held on January 7, 1986 the Authority and the Architect determined, over Kramer's objections, that Quandel had met the requirements of Section 68.[6] Although responsibility for providing temporary heat passed to Kramer effective January 30, 1986, Kramer did not assume that responsibility at that time and Quandel continued to provide temporary heat under protest.

Quandel submitted its temporary heat claim to the Executive Director by letter dated March 16, 1987, requesting compensation from the Authority for the additional costs incurred in continuing to provide temporary heat for the Project.[7] Although the Executive Director initially declined to rule on the claim,[8] he ultimately rendered a decision on July 18, 1988 against Quandel and the matter was heard before the Board in January 1989.[9]

5. Kramer objected to a determination that the Project building was sufficiently "enclosed" because allegedly the exterior walls of the building were only partially erected and a permanent, water-tight roof had not yet been installed over the boiler room.

6. At the hearing before the Board, the Authority's Director of Technical Services denied his concurrence in the determination that the Project's building was sufficiently "enclosed". The Board, however, found that "the overwhelming weight of the evidence .[led] to the opposite conclusion."

7. Kramer had earlier indicated its intent to use the permanent heating system if it was functional at the time responsibility for providing heat was transferred from Quandel. Quandel alleged that the permanent heating system in place at the time of the transfer lacked adequate temperature controls and an adequate pump but continued to pay for the electricity and fuel needed to operate the heating system in accordance with the Contract.

8. The Executive Director declined to rule on the temporary heat claim on the ground that the issue was not ripe for his determination. On December 22, 1987 Quandel appealed the Executive Director's decision to the Board by filing a Complaint. The Authority filed Preliminary Objections to the temporary heat claim because Quandel had not first submitted the claim to the Authority's Executive Director in accordance with Paragraph 75 of the Contract. Quandel subsequently agreed to submit the claim to the Executive Director.

9. Prior to the Board hearing, the Authority had submitted a Motion for Summary Judgment seeking dismissal of Quandel's Complaint. The Motion was denied.

At the board hearing, the Authority contended that Kramer is the real party in interest in the temporary heating claim and that Quandel had failed to raise the issue of the inefficiency of the permanent heating system either at the administrative level or in its Complaint filed with the Board. Quandel contended that the Authority is the real party in interest in this claim, and that the Authority is estopped from asserting that Quandel failed to meet the criteria of Section 68(c) and that the Project building was not sufficiently "enclosed" so as to transfer responsibility for providing temporary heat from Quandel to Kramer.

On November 20, 1989 the Board found in favor of Quandel. The Board determined that the Authority was estopped from now asserting that Quandel did not meet the criteria of Section 68(c) of the Contract because Quandel had justifiably relied on the Authority's concurrence in the determination that the building was sufficiently "enclosed"; the Authority knew Quandel was operating under the belief that the responsibility for providing temporary heat had been transferred to Kramer and did nothing to disabuse Quandel of that belief; and Quandel had no duty to inquire further into whether the criteria of Section 68(c) had been met. Consequently, the Board awarded Quandel $8,273.84 in damages for extra costs incurred due to the Authority's failure to enforce the decision to transfer the responsibility for providing temporary heat, and $40,503.85 for extra costs incurred as a result of the Authority's decision to allow Kramer to use the permanent heating system without adequate temperature controls and adequate pumps. The Authority appeals the Board's determinations to this Court.

■ The first issue raised by the Authority is whether Kramer, the prime heating and ventilating contractor, and not the Authority is the real party in interest.[10] The Authority contends that Kramer is the real party in interest because the responsibility for providing temporary heat shifted from Quandel to Kramer on January 30, 1986, and

10. The Board made no specific findings of fact or conclusions of law with regard to this issue in the proceeding below.

that the present controversy is a dispute between the two prime contractors over allocation of costs and not with the Authority. Quandel contends that because both Quandel and Kramer are prime contractors and Quandel has no contractual relationship with Kramer, the Authority is the real party in interest in this dispute.

■ As a general rule, an action on a contract cannot be maintained against a person who is not a party to the contract unless the plaintiff is a third party beneficiary of the contract[11] or the suit is for product liability[12] or breach of warranty.[13] *Manor Junior College v. Kaller's Inc.*, 352 Pa.Superior Ct. 310, 318, 507 A.2d 1245, 1249 (1986). Because there is no privity of contract between Quandel and Kramer and because a claim under Section 402A or under the warranty provisions of the Uniform Commercial Code would clearly have been inappropriate in this case, Quandel could only have looked to the party with whom it is in privity to recover the additional cost incurred in providing temporary heat for the Project. That party, and therefore the real party in interest, is the Authority.

■ The Authority next contends that the Board erred in considering Quandel's "inefficient permanent heating system" claim in this appeal because Quandel allegedly never raised the issue during the administrative and Board pro-

---

**11.** "To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by one of the parties to the contract and the third person that the latter should be a beneficiary, but both parties to the contract must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally and assumed by him in his undertaking; the obligation to the third party must be created and must affirmatively appear, in the contract itself...." *General State Authority v. Sutter Corp.*, 44 Pa.Commonwealth Ct. 156, 164–65, 403 A.2d 1022, 1026–27 (1979), citing *Spires v. Hanover Fire Insurance Co.*, 364 Pa. 52, 56–7, 70 A.2d 828, 830–31 (1950) (Footnote omitted).

**12.** See Section 402A of the Restatement (Second) of Torts.

**13.** See the warranty provisions contained in Division 2 of the Uniform Commercial Code, Act of November 1, 1979, P.L. 255, No. 86, 13 Pa.C.S. §§ 2101–2725; see also *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968).

ceedings. In this claim, Quandel asserted that it incurred excessive costs and expenses when it continued to provide temporary heat after the effective date of transfer of responsibility from Quandel to Kramer because the permanent heating system which Kramer had elected to use lacked adequate temperature controls and an adequate pump. We cannot agree with the Authority that Quandel waived the "inefficient permanent heating system" claim. When Quandel raised its temporary heat claim before the Executive Director and in its Complaint to the Board, the claim, although entitled "Temporary Heat", by its very nature included the permanent heating system because that system was being used to provide temporary heat for the Project. Moreover, contrary to the Authority's assertions, the Board did make findings of fact regarding the "inefficient permanent heating system" issue.[14]

■ We now turn to the merits of the temporary heat claim. The Authority contends that the Board erred in determining that the Authority is estopped from asserting that the building was not sufficiently "enclosed" within the meaning of Section 68(c) of the Contract.

■ Equitable estoppel can be applied to a Commonwealth agency when it is acting in a proprietary capacity to preclude the agency from depriving a person of a reasonable expectation when that agency knew or should have known such person would rely upon the representation of

14. The Board found that:
 26. The general contractor (Quandel) incurred excessive costs for electricity and fuel necessary to operate the permanent heating system during the period October, 1986 through April, 1987 because the heating contractor elected to use the *permanent heating system without the required automatic temperature controls,* as a result of which the air handlers ran excessively. Additionally, as a result of an undersized pump, the system could not utilize heating oil but required natural gas, a more expensive fuel. (Emphasis added).
The Board continued on to find that:
 28. The extra costs incurred by Quandel as a result of the decision by the SPSBA to allow the heating contractor *to utilize the permanent heating system for temporary heat without adequate automatic temperature controls and without adequate pumps* sufficient to allow use of heating oil is $40,503.85. (Emphasis added).

the agency. *Matson v. Housing Authority of City of Pittsburgh,* 353 Pa.Superior Ct. 588, 593, 510 A.2d 819, 821 (1986). The rule of estoppel can also be stated that if a party is silent when it has the duty to speak, it will not be permitted to speak when it has the duty to remain silent. *Leininger v. Goodman,* 277 Pa. 75, 120 A. 772 (1923).

■ In order to apply the doctrine of equitable estoppel to a Commonwealth agency, the party sought to be estopped 1) must have intentionally or negligently misrepresented some material fact, 2) knowing or having reason to know that the other party would justifiably rely on the misrepresentation and 3) inducing the party to act to his detriment because of his justifiable reliance on the misrepresented fact. *Yurick v. Commonwealth,* 130 Pa.Commonwealth Ct. 487, 568 A.2d 985, 990 (1989).

The Board found that with respect to the temporary heating claim, Quandel had justifiably acted in reliance on the interpretations and determinations of the Authority and the Architect that the building was "enclosed".[15] Quandel continued to incur expenses in providing temporary heat in reliance on the Authority's decision that the building was sufficiently "enclosed" within the meaning of Section 68(c) of the Contract so as to transfer responsibility for providing temporary heat to Kramer. The record is clear that the Authority either approved or had reason to know of the decision regarding the transfer of responsibility for providing temporary heat. Yet the Authority did nothing to disabuse Quandel of the belief that the responsibility had

**15.** Job Conference Report No. 29, dated January 7, 1986, contains the note:

> "Mr. Stahl (the Authority's Director of Technical Services) noted that [Quandel] had met the requirements for the building enclosure as outlined in Article 68 of the Conditions of Contract...."

Furthermore, a letter dated January 8, 1986 from Kramer to Stahl states:

> "Our firm has been advised that as of this date you concur with the general contractor (Quandel) that the building is properly enclosed in accordance with paragraph 68 entitled 'Heat' of the 'Conditions of Contract' whereby our obligation for providing temporary heat shall commence...."

transferred to Kramer. Moreover, Quandel had *no duty to inquire further* as to whether the building was sufficiently "enclosed" and thereby justifiably relied on the Authority's representations regarding the "enclosure". We therefore agree with the Board that the Authority is now estopped from asserting that the Project building was not sufficiently "enclosed" within the meaning of Section 68(c).

## II. The Site Preparation Claim

The second dispute involves certain excavating and landscaping work undertaken to prepare the site of the Project. Quandel had entered into a subcontract with General Crushed Stone, Inc. (Excavator) and a separate subcontract with Wodrig Nursery (Landscaper) in order to do the site preparation work. The subcontract with Excavator includes a provision of the Contract setting forth the topsoil requirements for the site preparation work.[16] In a similar manner, the subcontract with Landscaper includes a provision of the Contract setting forth the subsoil requirements and the method for preparing the topsoil for grass seeding.[17]

Excavator and Landscaper began work in late 1985. The work was observed by the Authority's resident inspector. On September 16, 1986 the Authority issued a stop work order and rejected all of the topsoil, seeding, and subsoil preparation[18] performed by Quandel's subcontractors. The work was rejected because the Contract's organic requirements for the topsoil allegedly were not met[19] and because

16. Excavator's contract with Quandel calls for imported topsoil with specific organic requirements and requires that the topsoil be free of debris larger than two inches in size.

17. Landscaper's contract with Quandel sets forth the method of preparing the subsoil and requires that the subsoil be free from debris and stones larger than one and one-half inches in size.

18. The Board found that "[a]t the time the rejection order was issued, 90% of the topsoil was spread and 25% to 35% of it was seeded and another 50% to 60% was ready for seeding. The area immediately to the west of the building in which the tennis court was located had been seeded and was supporting a growth of lawn...."

19. After receiving the directive from the Authority which rejected the site preparation work, Quandel engaged an independent consultant

the subsoil had allegedly not been prepared in accordance with the Contract's specifications.[20] As a result of the Authority's rejection of the work, Quandel directed its subcontractors to remove the rejected lawns and topsoil and do the job over again.

On March 16, 1987 Quandel submitted its site preparation claim to the Executive Director at the same time it had submitted its temporary heat claim. The Executive Director concluded that the Authority's rejection of certain site preparation work was justified because the work had initially not been done in compliance with the Contract's specifications. On December 20, 1988 the Authority submitted a Motion for Summary Judgment in which it sought dismissal of Quandel's Complaint on the grounds that the site preparation claim is barred by contractual and statutory limitations of action.[21] As mentioned in the discussion regarding the temporary heat claim, the Authority's Motion for Summary Judgment was dismissed.

As in the case of the temporary heat claim, the Board found in favor of Quandel with regard to the site preparation claim. The Board held that Quandel's site preparation claim was not barred by contractual or statutory periods of

who conducted random soil sample tests and found the Quandel subcontractors' work to have met the criteria of the Contract's specifications.

20. The Contract specified that the subsoil "shall be loosened and graded by harrowing, discing or dragging to a depth of six inches and then hand-raked to remove general debris and all stones over one and one-half inches." Quandel's subcontractors loosened the subsoil by back-dragging the prong end of a front-loader's bucket over the site. They did not hand-rake the subsoil because the Architect's representative, James Cogan, informed them that handraking would not be necessary.

The Authority contends that the reason for rejecting the Quandel subcontractors' work was not based on the method used in preparing the subsoil, i.e., back-dragging, but because Quandel had not loosened the subsoil to a depth of six inches. However, the Authority's resident inspector admitted at trial before the Board that he had not checked the depth of the loosened subsoil.

21. Paragraph 75 provides that the contractor must first submit any disputed claim to the Executive Director. Following the Executive Director's rendering of a decision, the contractor may then bring an appeal to the Board within 30 days.

limitation because the language in Paragraph 75 of the Contract creates a latent ambiguity and Quandel had made a reasonable interpretation of that provision. Furthermore, the Board held that the Authority failed to establish any justification for rejecting the site preparation work because Quandel had loosened and graded the subsoil and removed debris in accordance with the Contract's specifications. Because Quandel had complied with the Contract's specifications, the Board found that the Authority's insistence for Quandel to redo the site preparation work was a breach of contract. Moreover, because Quandel had relied on the decision of the Architect's representative, based on his interpretation of the Contract, that hand-raking of the subsoil was not necessary, because the Authority was aware of that interpretation and did not object to it, and because Quandel had no duty to inquire further as to whether hand-raking was required, the Board held that the Authority was estopped from rejecting the site preparation work. Consequently, the Board awarded Quandel $105,789.09 in damages, representing the total cost incurred in redoing the site preparation work.

The Authority has appealed the Board's determinations to this Court. Initially, the Authority continues to maintain that Quandel's site preparation claim is barred by the 30–day contractual period of limitations because Quandel filed its appeal to the Board more than 30 days after the Executive Director rendered his adverse decision. We agree with the Board, however, that Quandel's site preparation claim is not barred because the claim accrued during the 30–day period after the Executive Director rendered his adverse decision and Quandel thereafter filed its appeal within the statutory six-month period.

Paragraph 75 provides, in pertinent part:

a. In all claims or controversies in excess of $300.00 any party aggrieved by the determination of the Executive Director shall, within thirty (30) days from notice thereof, have the right to submit such controversy to the BOARD OF ARBITRATION OF CLAIMS AGAINST

THE STATE pursuant to the Act of May 20, 1937, P.L. 728, No. 193,.... [T]he rules and regulations of such Board are incorporated herein by reference thereto.

b. The Authority itself, in any claim or controversy arising out of or relating to this contract or a breach thereof in excess of $300.00, may directly submit such matter to the BOARD OF ARBITRATION OF CLAIMS AGAINST THE STATE, without first submitting same to the Executive Director.

The Authority contends that Quandel's cause of action accrued on March 6, 1987, the date the Authority's Director of Technical Services rejected certain site preparation work and required Quandel to redo the work. The Authority also contends that because Quandel did not appeal the Executive Director's decision to the Board until December 22, 1987, more than 180 days after the Executive Director's decision of June 23, 1987, Quandel's site preparation claim is time-barred pursuant to Paragraph 75. The Authority supports its contentions by citing the rule that parties to a contract may agree to a shorter time period in which to commence an action on the contract than that provided by law. See, e.g., *General State Authority v. Sutter Corp.*, 44 Pa.Commonwealth Ct. 156, 165–66, 403 A.2d 1022, 1027 (1979).

■ Agreements purporting to reduce the time period in which to commence a suit must be reasonable and with the requisite clarity. See, e.g., *Ercole v. Metropolitan Life Insurance Co.*, 155 Pa.Superior Ct. 549, 39 A.2d 293 (1944). We find, however, that the Contract contains ambiguous terms which the Authority interprets as purporting to shorten the period of limitations during which a party may commence an action upon the contract.

Paragraph 75 creates a 30–day period of limitations at the same time it incorporates by reference the statute which created the Board and its rules and regulations, including the six-month period of limitations.[22] According to the

22. *See* Act of May 20, 1937, P.L. 728, No. 193, *as amended,* 72 P.S. § 4651–6, which provides:

Authority's interpretation of Paragraph 75, the State would have six months to file a claim with the Board after a claim accrued while a contractor would only be given 30 days to do the same. Paragraph 75, however, is susceptible of another interpretation which Quandel employed and the Board found to be reasonable. Under the second interpretation, Quandel could not have filed an appeal until the Executive Director issued a decision with regard to the disputed matter. Quandel submitted its site preparation claim to the Executive Director on March 16, 1987, ten days after the site preparation work was rejected. According to the language "within thirty (30) days from notice [of the Executive Director's determination]", Quandel's cause of action accrued within 30 days from June 23, 1987, the date the Executive Director decided against Quandel and the earliest day on which Quandel's cause of action could have accrued. Quandel would then have six months to file its appeal with the Board because of the six-month statutory period of limitations incorporated by reference into the Contract. The reference to both periods of limitation in Paragraph 75 therefore creates a latent ambiguity[23] in the Contract and an internal conflict as to when a claim may be filed with the Board.

A written instrument is ambiguous if it is reasonably or fairly susceptible of more than one construction. *State Highway and Bridge Authority v. E.J. Albrecht Co.,* 59 Pa.Commonwealth Ct. 246, 430 A.2d 328 (1981). When a contract is ambiguous, it is undisputed that the rule of *contra proferentem*[24] requires the language to be con-

The Board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been *filed within six months after it accrued.* (Emphasis added).

**23.** The Board found the ambiguity to be latent because neither the Authority nor Quandel raised the matter at any time prior to the filing of the Authority's Motion for Summary Judgment.

**24.** The rule of *contra proferentem* is expressed in the Restatement (Second) of Contracts as follows: "In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies

strued against the drafter and in favor of the other party if the latter's interpretation is reasonable. *Commonwealth of Pennsylvania, Department of Transportation v. Semanderes,* 109 Pa.Commonwealth Ct. 505, 511, 531 A.2d 815, 818 (1987).

We also find that Quandel's interpretation is the more reasonable of the two interpretations of Paragraph 75. The Authority's interpretation is unreasonable because the same contractual provision would allow the Authority to file a claim with the Board within six months of the accrual of the claim, but would require a contractor to file a claim within only 30 days. Because a government contract will be construed against the government where, as here, the contractual provision in question is ambiguous and unreasonable, we conclude that the Authority's interpretation of Paragraph 75 is erroneous and that Quandel must prevail. Accordingly, we agree with the Board's conclusion that a cause of action accrues within 30 days after the Executive Director renders an adverse decision, and thereafter a party has six months to file a claim with the Board.

 The Authority also contends that the Board erred in determining that the Authority is estopped from rejecting the site preparation work done by Quandel's subcontractors.[25] The Authority contends that it is not so estopped. We cannot agree.

We have set forth the requirements for equitable estoppel to apply to a Commonwealth agency in the discussion relating to the temporary heat claim. The Authority contends that Quandel could not have relied upon the Authority's representations because Quandel had failed to comply with the specifications of the Contract. Quandel, however, had its subcontractors proceed with the site preparation work in reliance on the Authority's acceptance of the Archi-

the words or from whom a writing otherwise proceeds." Restatement (Second) of Contracts § 206.

**25.** Quandel contends that because "the facts of record support the conclusion that the [Authority's] rejection of [Quandel's] work was a breach of contract, the issue of estoppel becomes moot."

tect's determination that hand-raking the subsoil would not be necessary because the subsoil had already been back-dragged. Even if the Board had found that the Authority had not breached the Contract, the Authority would be estopped from rejecting the site preparation work.[26]

The Authority had remained silent and allowed Quandel to proceed with the work. As in the temporary heat claim, the Authority did nothing to disabuse Quandel of the beliefs under which it was operating. Quandel also had no duty to inquire further as to whether hand-raking would be necessary because the Architect's representative determined, based on his interpretation of the Contract, that such a procedure would not be necessary. We therefore agree with the Board that the Authority is now estopped from rejecting the site preparation work completed by the Quandel subcontractors.

### III. Calculation of Damages

The final issue for our determination is whether there was sufficient evidence to support the Board's calculation of damages, including prejudgment interest, awarded to Quandel. The Authority contends that the award of prejudgment interest was not appropriate because Quandel's plea for damages did not sound in breach of contract for payment of a definite sum of money but instead was a recovery of an amount above the contract amount.

The Board found that the Authority did not question the testimony offered by Quandel on damages. Because there was no contradictory evidence in the record as to the amount of damages, the Board properly awarded the full amount claimed by Quandel which was $48,779.69 with six percent interest per annum beginning January 30, 1986 in connection with the temporary heat claim, and $105,789.09 with six percent interest per annum beginning September 16, 1986 in connection with the site preparation claim.

---

**26.** The Board found that Quandel had loosened and graded the subsoil and removed debris in accordance with the Contract's specifications.

■ As to whether the Board properly awarded prejudgment interest on the damages it awarded to Quandel, if the breach of contract consists of a failure to pay a definite sum in money, interest is recoverable from the time of performance on the amount due. Restatement (Second) of Contracts § 354(1) (1981).[27] The Board determined that the time of performance on the amount due for the temporary heat claim is January 30, 1986, the effective date of the transfer of responsibility for providing temporary heat from Quandel to Kramer, and the time of performance on the amount due for the site preparation claim is September 16, 1986, the date that the Authority rejected the site preparation work. In both cases the interest awarded was at the annual legal rate of six percent.[28]

■ The right to prejudgment interest on money owing upon a contract is a legal right. *Fernandez v. Levin,* 519 Pa. 375, 379, 548 A.2d 1191, 1193 (1988). We conclude that the Board did not err in awarding Quandel prejudgment interest insofar as the site preparation claim is concerned, but that the Board did err in awarding prejudgment interest to Quandel on the temporary heat claim from January 30, 1986, the effective date of the transfer of responsibility for providing temporary heat to Kramer.

Because interest is recoverable from the time Quandel incurred the expense of providing temporary heat, the Board should have awarded prejudgment interest on the temporary heat claim only from the time Quandel became liable for fuel and other expenses which it incurred in providing temporary heat. We therefore reverse the Board's order to the extent that it is inconsistent with this

27. Adopted by the Pennsylvania Supreme Court in *Penneys v. Pennsylvania R.R. Co.,* 408 Pa. 276, 183 A.2d 544 (1962). The section was formerly Section 337.

28. The legal rate of interest in Pennsylvania is fixed by statute at six percent. Act of Jan. 30, 1974, P.L. 13, No. 6, § 202, 41 P.S. § 202. The computation of interest is a "simple clerical matter based upon dates and amounts appearing on the face of the record." *Kessler v. Old Guard Mutual Insurance Co.,* 391 Pa.Superior Ct. 175, 570 A.2d 569, 573 (1990) (quoting *Fish v. Gosnell,* 316 Pa.Superior Ct. 565, 584–85, 463 A.2d 1042, 1052 (1983)).

opinion and remand for a recalculation of the proper amount of prejudgment interest to be awarded to Quandel.

The order of the Board is affirmed except as to the calculation of prejudgment interest with regard to the temporary heat claim. An appropriate order will be entered.

## ORDER

AND NOW, this 14th day of January, 1991, the order of the Board of Claims, Docket No. 1192 of 1987, dated November 20, 1989, is affirmed, except to the extent of the award of prejudgment interest on the temporary heat claim as of January 30, 1990. We remand and the Board is ordered to recalculate the amount of prejudgment interest on the temporary heat claim as of the date Noble C. Quandel Company became liable for fuel and other expenses incurred in providing temporary heat under protest. Jurisdiction relinquished.