DEPARTMENT OF GENERAL
SERVICES, Petitioner

v.

LIMBACH COMPANY and Penn
Transportation Services,
Inc., Respondents.

Department of General Services,
Petitioner

v.

Cast & Baker Corporation and Penn
Transportation Services, Inc.,
Respondents.

Commonwealth of Pennsylvania,
Department of General
Services, Petitioner

v.

The Farfield Company and Penn
Transportation Services,
Inc., Respondents.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2004.
Decided Dec. 6, 2004.

Elizabeth A. O'Reilly, Harrisburg, for petitioner.

Jeffrey S. Proden, Uniontown, for respondents.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Before this court are the consolidated interlocutory appeals of Commonwealth of Pennsylvania, Department of General Services (DGS) from three orders of the Board of Claims (Board), at Docket Nos. 3501, 3568, and 3630, granting the motions of Penn Transportation Services, Inc. (Penn Transportation) to join P.J. Dick, Inc. (P.J. Dick) as an additional defendant in each docket's breach of contract action before the Board. We reverse and remand.

DGS and P.J. Dick entered into a contract (DGS/PJD Contract) under which P.J. Dick was to perform as construction manager for DGS on a new maximum se-

curity prison in Fayette County, Pennsylvania (the Project). DGS awarded a prime contract to Penn Transportation (DGS/PT Contract) to perform site excavation work and final grading of the Project site, one of the earliest phases of work on the Project. DGS also bid and awarded prime contracts to the Respondent Plaintiffs in this case (hereafter, Plaintiffs): Limbach Company (mechanical construction work); Cast & Baker Corporation (site utilities); and The Fairfield Company (electrical construction work).[1]

Plaintiffs each filed a complaint against DGS with the Board, seeking damages resulting from DGS's breach of its respective contracts with Plaintiffs. Plaintiffs alleged

that DGS did not disclose, or timely prepare, the Project site conditions as set forth in the contract documents and at the pre-bid meeting. Further, Plaintiffs alleged that DGS's failure to provide the agreed upon site excavation and grading adversely impacted Plaintiffs' productivity and increased their costs when they encountered conditions on the Project site that differed substantially from those represented by DGS, upon which Plaintiffs relied prior to bidding on the contracts.[2]

The Board granted original defendant DGS's subsequent motions for permission to untimely join Penn Transportation as an additional defendant in all three cases. In its complaints against Penn Transporta-

1. Penn Transportation and each of the Plaintiffs signed a Standard Form of Agreement (Agreement) with DGS. Each of the Agreements named P.J. Dick as construction manager for the Project, but P.J. Dick did not sign any of the Agreements.

2. In Docket No. 3501, Limbach alleged, *inter alia,* that, in preparing its bid, it relied upon the contract documents and upon information provided by DGS regarding the Project site conditions Limbach would encounter in performing under its contract with DGS. Limbach understood that DGS entered a separate contract with its site excavation contractor (Penn Transportation) to perform excavation and grading to shape the site as shown on the drawings, from which Limbach reasonably concluded that it would encounter little or no unfractured rock in its trenching operations for the installation of underground utility piping. Limbach alleged that it actually encountered site conditions substantially different than those represented by DGS. According to Limbach, these unanticipated conditions substantially reduced Limbach's efficiency and increased Limbach's costs of performance, resulting in damages of $332,153.34. (R.R. at 5a–9a.)

In Docket No. 3568, Cast & Baker alleged, *inter alia,* that its work was integrated with and dependent upon the timely progress or completion of work by other contractors, including the site excavation contractor (Penn

Transportation). According to Cast & Baker, DGS's actions and/or inactions adversely impacted on Cast & Baker's ability to perform its work on the Project in the manner anticipated by Cast & Baker in placing its bid. Specifically, the Project plans and specifications called for the ground to be excavated and brought to finished grade before Cast & Baker was to install site utilities. However, because final grading of the site was not done properly and was behind schedule, Cast & Baker's work was delayed and its costs increased, resulting in damages of $2,416,352.00. (R.R. at 345a–50a.)

In Docket No. 3630, Fairfield alleged, *inter alia,* that in preparing its bid, it relied upon the contract documents and upon information provided by DGS regarding the site conditions Fairfield would encounter in performing the electrical portion of the Project under its contract with DGS. Fairfield understood that DGS entered a separate contract with its site excavation contractor (Penn Transportation) to shape the site to conform with Project specifications, from which Fairfield reasonably concluded that, in fill areas, it would not encounter any rocks in excess of six inches in diameter. Fairfield alleged that it actually encountered site conditions significantly different than those represented by DGS and depicted in the contract documents, and these unanticipated conditions substantially increased the cost of Fairfield's performance, resulting in damages of $189,225.20. (R.R. at 167a–74a.)

716

tion, DGS alleges, *inter alia,* that Penn Transportation's actions and/or inactions in performing its site excavation and grading under the DGS/PT Contract caused the damages allegedly incurred by Plaintiffs in that Penn Transportation did not rough grade the site properly, did not timely complete its work, did not remove the bedrock and did not work in sequence.

Penn Transportation then sought permission to join P.J. Dick as an additional defendant in all three cases,[3] alleging that if the allegations set forth in DGS's complaint against Penn Transportation are proven in whole or in part, then P.J. Dick has breached the terms of the DGS/PJD Contract in that it failed to satisfactorily perform its contractual and supervisory obligations as construction manager with respect to the Project's site excavation work. Using virtually identical language in all three motions, Penn Transportation alleged that P.J. Dick was responsible for overseeing and guaranteeing all the work performed to ensure that DGS's Project specifications were met, and P.J. Dick supervised and fully approved Penn Transportation's work. Therefore, according to Penn Transportation, any nonconformity in Penn Transportation's excavation work claimed or proven by Plaintiffs and/or DGS was the direct and proximate result of P.J. Dick's breach of contract, its negligent failures and its misrepresentations. Penn Transportation thus asks that P.J.

Dick be held: (1) solely liable to Plaintiffs and/or DGS for any damages awarded; (2) liable over to Penn Transportation for contract damages, indemnification and/or contribution; (3) jointly and severally liable with Penn Transportation on DGS's cause of action; and/or (4) liable to Penn Transportation on any cause of action arising out of the transactions, events or occurrences upon which Plaintiffs' or DGS's causes of action are based.

Over DGS's objections,[4] the Board, in three separate orders, granted Penn Transportation's motion for permission to join P.J. Dick as an additional defendant in each of the Plaintiffs' breach of contract cases against original defendant DGS and additional defendant Penn Transportation. The Board certified that these interlocutory orders involved a controlling question of law, and, subsequently, this court granted and consolidated DGS's three petitions for permission to immediately appeal the Board's decision.[5] In doing so, we restricted our consideration to the sole issued posed by DGS, i.e., whether Penn Transportation may join P.J. Dick as an additional defendant in Plaintiffs' actions before the Board. We now hold that the answer to this question is no.

Under its enabling statute, the Board has been given "exclusive jurisdiction to hear and determine all claims against the

---

3. Penn Transportation also sought and received permission to join its subcontractor, GeoMechanics, Inc., which was to act as the soil engineer on the Project and provide Penn Transportation with information regarding the excavation and grading to be done by Penn Transportation. DGS did not oppose Penn Transportation's joinder of GeoMechanics.

4. Neither Plaintiffs nor P.J. Dick have objected to joining P.J. Dick as an additional defendant.

5. This court's scope of review of a decision of the Board of Claims is limited to a determination of whether constitutional rights have been violated, an error of law was committed or necessary findings of fact are supported by substantial evidence. *State Public School Building Authority v. Noble C. Quandel Co.,* 137 Pa.Cmwlth. 252, 585 A.2d 1136 (1991). The present appeal presents a purely legal question, subject to our plenary review. *See In re Estate of Wagner,* 791 A.2d 444 (Pa. Cmwlth.), *appeal granted,* 572 Pa. 718, 813 A.2d 848 (2002).

Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more." Section 3 of the Board of Claims Act (Act),[6] 72 P.S. § 4651–4. Courts have interpreted this language to prohibit the Board's exercise of jurisdiction over claims sounding in tort. *Vartan v. Commonwealth*, 151 Pa.Cmwlth. 86, 616 A.2d 160 (1992), *appeal denied*, 535 Pa. 627, 629 A.2d 1386 (1993); *Miller v. Department of Environmental Resources*, 133 Pa.Cmwlth. 327, 578 A.2d 550, 553, *appeal denied*, 526 Pa. 643, 584 A.2d 324 (1990).

DGS argues that, because the Board lacks subject matter jurisdiction over claims sounding in trespass, joinder would be permissible only if Penn Transportation stated an independent and viable contractual claim against P.J. Dick, and the Board erred by allowing Penn Transportation to join P.J. Dick based upon allegations that P.J. Dick breached the DGS/PJD Contract. DGS relies on *State Public School Building Authority v. Noble C. Quandel Co.*, 137 Pa.Cmwlth. 252, 585 A.2d 1136 (1991), and *Kinback Corporation v. Quaker Construction Management, Inc.*, 2001 WL 1231716 (M.D.Pa.), as standing for the proposition that one party cannot be sued by another in contract absent privity of contract between the parties unless the

plaintiff is a third party beneficiary under the contract. According to DGS, Penn Transportation's failure to establish privity of contract with P.J. Dick, or intended third party beneficiary standing with respect to the DGS/PJD Contract, should have compelled the Board to deny Penn Transportation's motion for joinder. Indeed, DGS maintains that only DGS may assert a claim against P.J. Dick for breach of the DGS/PJD Contract, and DGS chose not to do so.

Penn Transportation counters that, while both *Quandel* and *Kinback* concern the standard for filing a breach of contract action against a person who is not a party to the contract, the cases do not discuss the principle of joinder. Penn Transportation reminds us that it is not asserting a tort claim against DGS but, rather, raises its tort claims against P.J. Dick. Penn Transportation insists that, because the Board clearly has jurisdiction to hear Plaintiffs' claims against DGS arising out of breach of contract, the Board also has jurisdiction to hear all ancillary claims arising as a result of Plaintiffs' suits. As support for this position, Penn Transportation relies on *Derry Township School District v. Day & Zimmerman, Inc.*, 345 Pa.Super. 487, 498 A.2d 928 (1985), in which the superior court held that joinder of a third-party defendant was proper under Pa. R.C.P. No. 2252(a)(4),[7] *even absent*

---

6. Act of October 5, 1978, P.L. 1104, 72 P.S. § 4651–4, rewriting section 4 of the Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. § 4651–4. At the time Limbach filed its action against DGS, the jurisdiction of the Board was set forth in this section of the Act. However, by the time Fairfield and Cast & Baker filed their claims against DGS, the Board of Claims Act had been repealed by section 12.2 of the Act of December 3, 2002, P.L. 1147, and replaced with a new Subchapter C of Chapter 17 of the Commonwealth Procurement Code, 62 Pa.C.S. §§ 1721–1726. Section 1724 of the Procurement Code, 62 Pa.C.S. § 1724, governing the Board's jurisdiction, provides, in relevant part, that the

"[B]oard shall have exclusive jurisdiction to arbitrate claims arising from ... (1) A contract entered into by a Commonwealth agency in accordance with this part and filed with the [B]oard in accordance with section 1712.1 (relating to contract controversies). 62 Pa. C.S. § 1724(a)(1). The provisions of both the Board of Claims Act and the Procurement Code have been cited in this case; however, because the jurisdictional language is generally unchanged, the conflict is not material to our decision.

7. Pa. R.C.P. No. 2252(a) governs joinder of an additional defendant. The rule permits any defendant or additional defendant to join as

*privity of contract*, where the third-party complaint was predicated on the same series of occurrences as those underlying the plaintiff's claim for relief. Penn Transportation maintains that, similar to the situation in *Derry Township*, Penn Transportation's complaint against P.J. Dick is predicated on the same series of occurrences as those underlying Plaintiffs' claim for relief—the disputed set of circumstances whose result was to leave Plaintiffs with conditions on the Project that allegedly differed substantially from those represented by DGS.[8] Therefore, Penn Transportation argues that the reasoning in *Derry Township* controls and requires that we affirm the Board's order permitting joinder. We disagree.

■ Although *Derry Township* provides an accurate interpretation of Pa. R.C.P. No. 2252(a)(4), we remind Penn Transpor-

tation that this case was considered by the superior court, which has jurisdiction over both trespass and assumpsit matters; the case did not deal with the exclusive jurisdiction of the Board. It is axiomatic that a rule of procedure cannot operate to confer jurisdiction. *Department of Transportation v. Joseph Bucheit & Sons Co.*, 506 Pa. 1, 483 A.2d 848 (1984); *Smaha v. Landy*, 162 Pa.Cmwlth. 136, 638 A.2d 392, *appeal denied*, 539 Pa. 660, 651 A.2d 546 (1994) (stating that rules of civil procedure cannot abridge, enlarge or modify substantive rights and jurisdiction established by statute). Thus, we reject Penn Transportation's argument that Pa. R.C.P. No. 2252(a)(4) applies to vest the Board with jurisdiction over its tort claim against P.J. Dick.

■ Moreover, we are not persuaded by Penn Transportation's assertion that

---

an additional defendant any person, whether or not a party to the action, who may be:

(1) solely liable on the plaintiff's cause of action, or

(2) liable over to the joining party on the plaintiff's cause of action, or

(3) jointly or severally liable with the joining party on the plaintiff's cause of action, or

(4) *liable to the joining party on any cause of action arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based.*

Pa.R.C.P. No. 2252(a) (emphasis added).

8. In *Derry Township*, the Derry Township School District (District) brought an action against an engineering firm in both trespass and assumpsit, seeking damages resulting from the firm's preparation of defective specifications for planned roof repairs on one of the District's school buildings and breach of the firm's contract with the District to plan and supervise those repairs. The engineering firm brought a third-party complaint against the roofing contractor hired by the District to perform the repairs, seeking damages for contribution and indemnity based on allegations that any problems with the roof were attributable to the contractor's negligent workman-

ship and failure to follow the engineering firm's specifications. The trial court issued an order sustaining the contractor's preliminary objections and dismissing the third-party complaint for improper joinder under Pa. R.C.P. No. 2252(a).

The superior court reversed, holding that joinder was proper under Pa. R.C.P. No. 2252(a)(4), which allows the joinder as an additional defendant of any person "liable to the joining party on any cause of action arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based." The superior court acknowledged that the District's breach of contract action attributed the roof's defects to the engineering firm's improper specifications and supervision, while the engineering firm's third-party complaint attributed the defects to the contractor's noncompliance with the specifications and negligent workmanship. Nevertheless, the superior court concluded that joinder was proper because the third-party complaint was predicated on the same 'series of occurrences' as those underlying the District's claim for relief—the disputed set of circumstances whose result was to leave the District with a defective roof.

the Board must hear its claims in the interest of judicial economy, to avoid repetitious litigation in a separate venue and to obtain all the facts necessary to make an appropriate and just ruling.[9] In *United Brokers Mortgage Company v. Fidelity Philadelphia Trust Company*, 26 Pa. Cmwlth. 260, 363 A.2d 817, 822 (1976), we stated, "Neither precepts of judicial economy nor the promotion of the orderly administration of justice can be extended to afford ancillary jurisdiction to the Board to hear a tort claim against [a private party] because it assertedly arises out of a multi-contract relationship involving the [instrumentalities of the Commonwealth.]" Similarly, the Board cannot assume jurisdiction over tort actions simply because the private party is not sued directly but is brought into the action as an additional defendant. *Department of Revenue, Bureau of State Lotteries v. Irwin*, 82 Pa. Cmwlth. 266, 475 A.2d 902 (1984); *Fred S. James & Co., Inc. v. Board of Arbitration of Claims*, 44 Pa.Cmwlth. 289, 403 A.2d 1051 (1979); *General State Authority v. Van Cor, Inc.*, 27 Pa.Cmwlth. 203, 365 A.2d 1350 (1976). Like any other tribunal, the Board has the implicit right to decide every question which occurs in a cause of action *over which it has jurisdiction. Shovel Transfer and Storage, Inc. v. Simpson*, 523 Pa. 235, 565 A.2d 1153 (1989). However, the jurisdiction of the Board is limited to the adjudication of claims against the Commonwealth arising in contract; the Board does not have ancillary jurisdiction over claims sounding in trespass.[10] Because Penn Transportation

9. In this regard, we stress that our decision here in no way prejudices Penn Transportation; indeed, the determination of Penn Transportation's liability is not dependent on its joining P.J. Dick in the case before the Board. Penn Transportation is free to defend itself before the Board by asserting that it relied on P.J. Dick's approval of its site preparation work. *See Quandel* (affirming a Board decision holding that where the construction contractor relied on the architect's interpretation of the contract that hand-raking of top soil was unnecessary, and the Commonwealth did not object to this interpretation, the Commonwealth was estopped from rejecting the site preparation work and had to pay the cost incurred in redoing the site preparation work.) In addition, the Board's enabling statute not only gives the Board exclusive jurisdiction to deal with contract matters involving state agencies but also provides that the "[B]oard shall have power ... to order the interpleader or impleader of other parties whenever necessary for a complete determination of any claim or counterclaim." 62 Pa.C.S. § 1725(d). Thus, the Board has authority to order the impleader of P.J. Dick into the action on the ground that P.J. Dick is, or may be, liable for all or part of the claim against DGS.

10. The Board notes that, in the past, courts have endorsed a broad view of the jurisdiction given the Board over cases "arising in contract," and the Board cites several cases for the proposition that courts have not limited such jurisdiction to parties in strict privity with one another. However, while these cases extend the Board's jurisdiction to cover contract actions involving a private party, we do not agree that these cases offer convincing authority or sound reason to extend the Board's jurisdiction to include Penn Transportation's tort claim against P.J. Dick. Indeed, none of these cases extends the jurisdiction of the Board to hear and decide a tort claim or a dispute between private parties who have *no* privity of contract. *See, e.g., Department of Transportation v. Brayman Construction Corp.-Bracken Construction Co.*, 99 Pa.Cmwlth. 373, 513 A.2d 562 (1986) (holding that the Board had jurisdiction to hear a case *against the Department of Transportation* arising from a contract, which was brought by the general contractor on behalf of the subcontractor, although the general contractor did not prove damages to itself or that it was liable to the subcontractor for its damages); *United Brokers* (holding that jurisdiction with respect to a *contract claim* against a private party individually and as agent of the *defendant Commonwealth* is with the Board); *Brocker Manufacturing & Supply Company, Inc. v. United Bonding & Insurance Company*, 8 Pa.Cmwlth. 110, 301 A.2d 438 (1973) (holding that because the *contract dispute* between contractor and subcontractor affected the *de-*

seeks to join P.J. Dick as an additional defendant based on a cause of action sounding in tort, the Board erred in relying on *Derry Township* to permit Penn Transportation to join P.J. Dick.

■ Penn Transportation also argues that, notwithstanding a ruling that the Board lacks ancillary jurisdiction to hear the tort claims against P.J. Dick, joinder is proper here. According to Penn Transportation, an implied contract existed between Penn Transportation and P.J. Dick because DGS assigned its duties under the DGS/PT Contract to P.J. Dick, which, as construction manager on the Project, assumed the responsibility to oversee and approve Penn Transportation's work. Further, Penn Transportation asserts that it was a third party beneficiary of the written DGS/PJD Contract by virtue of P.J. Dick's assumption of these responsibilities. Again, we disagree.

Although the Board's jurisdiction encompasses equitable contract claims, such jurisdiction extends only to assumpsit actions based upon certain specified claims alleging express, implied-in-fact or implied-in-law contracts. *Department of Environmental Resources v. Winn*, 142 Pa. Cmwlth. 375, 597 A.2d 281 (1991), *appeal denied*, 529 Pa. 654, 602 A.2d 863 (1992). However, in its third-party complaint, Penn Transportation failed to allege the existence of an implied-in-fact or implied-in-law relationship with P.J. Dick.[11] Moreover, in seeking to join P.J. Dick, Penn Transportation also failed to assert its status as an intended third party beneficiary of the DGS/PJD Contract.[12] Thus, the Board could not permit joinder of P.J. Dick under these theories.

Accordingly, we reverse the order of the Board permitting Penn Transportation to join P.J. Dick as an additional defendant in Plaintiffs' breach of contract actions

---

fendant Commonwealth, who ultimately would have to pay for the work completed under that contract, had to be pursued before the Board); *Armour Rentals, Inc. v. General State Authority*, 4 Pa.Cmwlth. 517, 287 A.2d 862 (1972) (holding that, although subcontractor did not enter a contract with the Commonwealth, the Board was the proper forum for a claim by the subcontractor *against the Commonwealth* contending that the Commonwealth wrongfully released funds to the prime contractor, who in turn unjustly enriched himself at the expense of the subcontractor). These cases clearly addressed the preference, *whenever possible*, to allow one forum to decide cases and to avoid the potential anomaly of breaking up the matter and having different forums reaching opposite conclusions. However, they do not support the position that the Board's jurisdiction should be extended to consider and decide tort claims.

11. A contract implied-in-fact is an actual contract which arises when the parties agree upon the obligation to be incurred, but do not express this intention in words; instead, their intention is inferred from their actions in light of the surrounding circumstances. *Highland*

*Sewer and Water Authority v. Forest Hills Municipal Authority*, 797 A.2d 385 (Pa.Cmwlth. 2002), *appeal denied*, 577 Pa. 738, 848 A.2d 930 (2004); *Winn*. A contract implied-in-law, or quasi contract, imposes a duty despite the absence of either an express or implied agreement, when one party receives an unjust enrichment at the expense of another party. *Highland Sewer; Winn*. Penn Transportation's complaint against P.J. Dick failed to make the required allegations.

12. As a general rule, action on a contract cannot be maintained against a person who is not party to the contract unless the plaintiff is a third-party beneficiary of the contract, or the suit is for products liability or breach of warranty. *Quandel*. For a third-party beneficiary to have standing to recover on a contract, both parties to the contract must intend an obligation to the third party, and that intent must be indicated in the contract itself. *Id.* In seeking to join P.J. Dick as an additional defendant, Penn Transportation made no allegations regarding its status as an intended third-party beneficiary of the DGS/PJD Contract.

against DGS, and we remand this case for further proceedings.

*ORDER*

AND NOW, this 6th day of December, 2004, the orders of the Board of Claims, at Docket Nos. 3501, 3568 and 3630 are hereby reversed. The case is remanded for further proceedings in accordance with this opinion.

Jurisdiction relinquished.