William LUSBY, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (FISCHLER CO. & SPARMON, INC.), Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2009.

Decided July 9, 2009.

---

George E. Clark, II, Pittsburgh, for petitioner.

Paul G. Mayer, Jr., Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

This workers' compensation appeal is currently a dispute between two insurance companies about which one must recoup duplicate payments to medical providers. Liability to William Lusby (Claimant) is fully satisfied. The Workers' Compensation Judge (WCJ) ruled in favor of Claimant's private insurer, Highmark, now represented by Claimant's lawyer. The Workers' Compensation Appeal Board (Board) ruled in favor of the workers' compensation insurer. To resolve this dispute, we must decide whether Highmark's subrogation lien was sufficiently established in prior proceedings so that a penalty could be awarded for failure to satisfy the lien.

In particular, Claimant petitions for review of the order of the Board, which concluded the subrogation lien was not sufficiently established in prior proceedings and therefore reversed the order of the WCJ. We conclude that the subrogation lien was sufficiently established in prior proceedings; accordingly, we reverse the Board's order and reinstate the WCJ's award of a penalty for failure to satisfy the lien.

The prior proceedings arose from a 2002 incident in which Claimant suffered a low back injury while employed by Fischler Co. & Sparmon, Inc. (Employer). As a result, Claimant received weekly workers' compensation benefits pursuant to the provisions of the Pennsylvania Workers' Compensation Act (Act).[1] Some of Claimant's medical bills were paid by his private insurer, Highmark.

At the heart of the prior proceedings is an August 8, 2005, Compromise and Release Agreement (C & R) executed by the parties pursuant to Section 449 of the Act.[2] *See* Reproduced Record (R.R.) at 23–30. Under the agreement, Claimant received one lump sum payment of $85,000.00 in settlement of his workers' compensation claim against Employer. *Id.* at 23.

In addition, the body of the agreement stated the following, in pertinent part:

10. Summarize all benefits to be paid on and after the date of this stipulation

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2708.

2. *Added by* the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5.

or agreement for reasonable and necessary medical treatment causally related to the injury and the length of time such payment of benefits is to continue.

*Employer/insurer shall remain liable for any medical expenses outstanding or incurred by [Claimant] up to the date of the hearing on this agreement, 8/8/2005, to the extent that such medical expenses are causally related to the work injury and reasonable and necessary medical treatment thereof.* Employer/insurer maintains its right to challenge any such medical expenses, in accordance with the [Act]. Employer/insurer is released from liability for any and all medical expenses incurred by [C]laimant on or after 8/8/2005. Any medical expenses incurred by [Claimant] on or after 8/8/2005 are the responsibility of [Claimant].

11. *Is there an actual or potential lien for subrogation under Section 319*[3]? ☐ *Yes* ☒ *No*

\* \* \*

16. The fee agreement between claimant and counsel must be attached.

*[Claimant's] attorney also has 20% fee agreement on Highmark lien (attached).*

R.R. at 24, 25 (emphasis added).

As indicated, Claimant's attorney requested approval of fees both for his representation of Claimant and for his efforts in obtaining reimbursement of Highmark's subrogation lien. Fee agreements for both aspects of his work were attached to the C & R. The attached fee agreement

relating to Highmark's subrogation claim stated the following, in pertinent part:

As you are aware, this law firm has been retained as legal counsel in conjunction with \* \*SOCRATES, INC., to provide outsourcing subrogation services to Highmark, the Administrative Services Only ("ASO") contractor to this self-funded welfare benefit plan ("Self–Funded Plan"), with regard to the above-referenced subrogation case. Although Highmark as the ASO contractor and/or the Self–Funded Plan is entitled to proceed separately and directly against the third party, it may be in the best interest of all parties involved, for this firm to coordinate the Self–Funded Plan's contractual and equitable subrogation interest through the patient's legal counsel.

Accordingly, *we are authorized to request that you represent our client, Highmark,* the ASO contractor, through Paul J. Gitnik & Associates, LLC, *in connection with the Self–Funded Plan's contractual and equitable subrogation interests. We are authorized by our client to pay you 20% of the benefit payments recovered as the statutory attorney's fee.* This fee agreement is expressly conditioned upon the full and complete recovery of our client's contractual subrogation claim based solely upon its negotiated rates....

*We have requested the subrogation claim dollar amount from Highmark, and shall provide you with a copy of the same upon receipt.* Additionally, please be advised we reserve the right to pro-

3. Section 319 of the Act provides, in pertinent part:

Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement

or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the [WCJ] or [B]oard.

77 P.S. § 671.

vide you with and shall expect you to request, on behalf of your client, an updated Highmark Record of Claim Payments prior to final settlement and/or resolution of this case with this firm.

R.R. at 29 (emphasis added).

The prior proceedings were concluded following a hearing in August, 2005. The WCJ approved the C & R in a decision and order dated August 9, 2005. On September 1, 2005, the WCJ issued an amended order which stated:

Pursuant to correspondence, dated August 30, 2005, ... the previously circulated adjudication and Order, dated August 9, 2005, is hereby amended to reaffirm the subject matter of said correspondence, in accordance with the testimony and evidence received at the hearing of August 8, 2005, as well as the Compromise and Release Agreement which was circulated with the adjudication and Order.

*Accordingly, [Employer], through its administrator, AIGCS, is directed to issue payment for medical expenses as referenced in the Compromise and Release Agreement, inclusive of reimbursement of the Highmark lien as referenced in the Agreement as well as the attachment to the Agreement from Attorney Paul J. Gitnik and Associates, LLC,* dated March 24, 2005, and as counsel fees under the Agreement, and as referenced in paragraph 16 of the Compromise and Release Agreement, are approved, counsel fees are to be deducted from said amount and forwarded to counsel for [Claimant].

R.R. at 18 (emphasis added). Significantly, neither party appealed the August, 2005, order or the amended September, 2005, order.

In May, 2006, Claimant's attorney filed the current penalty petition alleging:

[Employer] has failed to pay the Highmark lien of $22,154.71, as well as 20% attorneys' fees on that lien to [Claimant's counsel], as ordered in [the WCJ's] September 1, 2005 Decision, despite requests for payment to be made. More than eight months have passed since payment of these expenses and fees were ordered and the undersigned seeks penalties for the carrier's willful disregard of the WCJ's decision.... [Claimant] requests that the Insurer, TPA or Self-insured Employer be required to pay penalties in the total amount of $11077.36, which represents 50[%] of the compensation to which [Claimant] was entitled, but which was not paid for the period from 09–01–2005 to 05–12–2006.

R.R. at 15. Ultimately, hearings before the *same* WCJ ensued.

After hearings, the WCJ made the following relevant findings of fact:

In defense of the Penalty Petition, *counsel for [Employer] ... has indicated that payment for the medical expenses at issue has been made by AIGCS, and as such there has been a double, or duplicate, payment for these medical expenses, issued by both Highmark and AIGCS.* As such, counsel contends that AIGCS has fulfilled all of its obligations under the initial order granting the compromise and release of benefits, circulated August 9, 2005, as well as the Amended/Corrected Order circulated September 1, 2005. Counsel has argued that given the duplicative payment of the medical expenses by both Highmark and AIGCS, [Claimant] bore the burden of seeking recovery of the payments issued by Highmark.... Counsel has also argued ... that [C]laimant's counsel was placed on notice of the double payment and has apparently made no effort to simply obtain refunds of the payments [from] the providers, and as such has made no effort to mitigate any damages involving this matter.

However, there is no evidence whatsoever, of record, to this effect, and *there is no documentation in evidence which suggests, or confirms, at any point, that [C]laimant's counsel was placed on notice of the double payment.* To the contrary, the documentary evidence suggests that payment was issued by Highmark as early as October 18, 2002 and no later than July 7, 2004 (as indicated in the far right hand column of Employer's Exhibit A), with the initial Order granting the compromise and release of benefits circulated more than a year later, on August 9, 2005, and the Amended/Corrected Order circulated almost a month later on September 1, 2005. *In advance of the initial Order, correspondence directed toward this matter was sent to the claims administrator for the insurer/administrator, on July 8, 2005 (Claimant's Exhibit 6),* and subsequent to the issuance of the two Orders referenced previously, a second letter was sent (to counsel for [Employer]) on November 23, 2005 (Claimant's Exhibit 7), almost three months after the issuance of the Amended/Corrected Order. *The first reference to a double, or duplicative, payment is in counsel's (for [Employer]) Position Statement of February 23, 2007.*

\* \* \*

Accordingly, given the considerable delay in the issuance of payment, a maximum penalty in the amount of $11,077.36 is granted (50% of $22,154.71).

R.R. at 11–12 (emphasis added).

As a result, the WCJ granted the penalty petition. Employer appealed to the Board. In its appeal, Employer alleged that "[t]he [WCJ] erred in not applying the doctrine of mutual mistake of fact to the terms of the [August 8, 2005 C & R] where *it appears that the agreement does not contain specific provisions as to the amount of any alleged lien and [Employer/carrier] had directly paid the [medical] bills, for which a third-party seeks reimbursement,* under the [Act] and where the [C & R] was silent as to the amount claimed under a lien. . . ." Appeal from Judge's Findings of Fact and Conclusions of Law at 1 (emphasis added).

■ The Board issued an order reversing the WCJ's order granting Claimant's penalty petition, stating in part:

[P]ursuant to Section 319, Highmark's right to subrogation was not self-executing and needed to be established by a contract or an order of a WCJ. Here, we see no indication that the C & R establishes Highmark's lien because it reflects that the parties agreed that there were no actual or potential liens for subrogation at the time it was executed, and furthermore, the Order approving the C & R does nothing more than approve the terms of that Agreement, and thus adds nothing additional. Given that there is no indication that either the C & R or the WCJ's Amended Order establishes Highmark's lien, the WCJ erred in concluding that [Employer's] failure to pay said lien and the counsel fees relating to it constituted a violation of the Act. . . .

R.R. at 6–7 (citations omitted). Claimant then filed the current petition for review.[4]

---

4. In a workers' compensation proceeding, this Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Comp. Appeal Bd. (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995).

■ In this appeal, Claimant's attorney contends that the Board erred in reversing the WCJ's order granting the penalty petition because the Board erred in determining that the Highmark lien was not established as an enforceable lien under Section 319 of the Act. We agree.

As noted above, the WCJ approved the C & R in an August, 2005 order. In addition, on September 1, 2005, the WCJ issued an amended order which expressly required reimbursement of the Highmark lien. Employer did not appeal either order. They are therefore final. *See Dep't of Labor & Indus. v. Workmen's Comp. Appeal Bd.*, 57 Pa.Cmwlth. 633, 426 A.2d 1291 (1981).

Moreover, and of particular significance here, Claimant's Exhibit 6 was received by the WCJ at the hearing on the penalty petition.[5] Exhibit 6 is a three-page exhibit consisting of a cover letter dated July 8, 2005, from Claimant's attorney to a claims representative of Employer's workers' compensation insurer. The letter identifies Highmark's subrogation lien as amounting to $22,154.71, and it asks that the claims representative, when preparing the C & R, "include the lien and our 20% fee agreement regarding the same." Attached to the cover letter are: a) correspondence dated July 7, 2005, from a representative of Highmark to Claimant's attorney setting forth the subrogation lien amount as $22,154.71; and b), a computer printout setting forth medical payments made to specific medical providers.

The significance of this exhibit is twofold. First, the exhibit *predates* the August 8, 2005 C & R. The exhibit therefore dispels any claim that Highmark's lien was not sufficiently established as to be enforceable through the C & R, which specif-

ically refers to it. Second, Exhibit 6 proves that Employer's workers' compensation insurer drafted the C & R. Under these circumstances, any ambiguity in the terms of the C & R may be resolved against the scrivener. *Com., State Pub. Sch. Bldg. Auth. v. Noble C. Quandel Co.*, 137 Pa.Cmwlth. 252, 585 A.2d 1136 (1991).

Further, as Employer did not object to the reference to the Highmark lien during the prior proceedings before the WCJ and did not appeal from the WCJ's amended order directing it to pay Highmark, there is no basis to relitigate any aspect of the prior proceedings. *Dep't of Labor & Indus.*

■ Contrary to the Board's determination, Highmark proved its lien was sufficiently established in prior proceedings. This Court requires that a subrogation lien be raised and established before the WCJ. *Indus. Recision Servs. v. Workers' Comp. Appeal Bd. (Farbo)*, 808 A.2d 994 (Pa. Cmwlth.2002). That was accomplished here.

In particular, based on Exhibit 6, Employer's workers' compensation insurer knew the exact amount of Highmark's lien and knew that the lien represented payments made to Claimant's medical providers before 2005. Also, the C & R specifically refers to Highmark's lien and expressly provides that Employer shall remain liable for medical expenses incurred by the Claimant before August 8, 2005. The circumstances support the WCJ's determination that Highmark's lien was sufficiently established in prior proceedings.

In appealing the WCJ's order to the Board, Employer challenged the validity of the Highmark subrogation lien because a

---

**5.** Exhibit 6 does not appear in the Reproduced Record; rather, it is only present in the Certified Record. It bears a stamp indicating the date it was offered on behalf of Claimant and admitted by the WCJ, "11/20/06." Certified Record at Claimant's Ex. 6.

specific amount of the lien was not set forth in the C & R. Employer asked that the doctrine of mutual mistake be applied. However, as discussed above, Claimant's Exhibit 6 quantified Highmark's lien to Employer's workers' compensation insurer *before* the C & R was executed and approved. Thus, Employer did not prove the factual basis for mutual mistake as to the amount of the lien.

■ To the extent Employer invites this Court to apply the doctrine of mutual mistake because the duplication of payments to some medical providers was unknown at the time of execution and approval of the C & R, we decline the invitation. Pennsylvania courts have long held that underestimating damages or entering into a settlement before damages are adequately assessed is not a mutual mistake of fact. *North Penn Sanitation, Inc. v. Workers' Comp. Appeal Bd. (Dillard)*, 850 A.2d 795 (Pa. Cmwlth.2004).

For all the foregoing reasons, the order of the Board is reversed, and the order of the WCJ is reinstated.

### *ORDER*

AND NOW, this 9th day of July, 2009, the order of the Workers' Compensation Appeal Board is **REVERSED** and the order of the Workers' Compensation Judge is **REINSTATED.**